EXHIBIT

1

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
CASE NO._____

2016 OCT 24  A  54  16 CVS 19081

| | |
|---|---|
| JUSTIN DRISKELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **COMPLAINT** |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| SUMMIT CONTRACTING GROUP, | ) |
| INC., | ) |
| | ) |
| Defendant. | ) |

## I.    INTRODUCTION

1.  A construction job site is an inherently dangerous place and is the last place one would expect an employer to disregard reports of an inebriated and physically threatening superintendent. Unfortunately, that is exactly what Florida-based Summit Contracting Group, Inc. ("Defendant" or "Summit") did at an already deeply troubled construction project in the University area of Charlotte, North Carolina. Despite Assistant Superintendent, Justin Driskell's ("Plaintiff" or "Justin") pleas for help to Summit executives, Summit retained the drunk and aggressive superintendent on the job site, "John Doe."[1] Summit's gross negligence ended with Doe bashing Justin's head into the pavement and screaming that he was "[f...ing] fired." Doe was likely irate because of Justin's calls to corporate and his refusal to endanger workers on the job site. Doe was wrong to attack Justin, but he was right about Justin being fired. As Justin was recuperating in the hospital, Summit turned off his company-issued cell

---

[1] John Doe is an alias.

phone and ignored Justin's repeated communications about returning to work. Then, in ultimate irony, Summit apparently continued to employ Doe.

2. Doe fled the scene of the crime before the police arrived on the day he savagely assaulted Justin, and Summit has run from responsibility for compensating Justin for the harms and losses it caused him. As a result, Justin brings claims against Summit for: violations of the North Carolina Retaliatory Employment Discrimination Act (Count I); wrongful discharge in violation of North Carolina public policy (Count II); battery (Count III); intentional infliction of emotional distress (Count IV) and negligent hiring, retention, and/or supervision (Count V).

## II.    PARTIES, JURISDICTION, AND VENUE

3. Plaintiff is a resident of Bulloch County in Statesboro, Georgia.

4. Summit is, and at all relevant times was, a Florida corporation that was doing business in Mecklenburg County, North Carolina.

5. Plaintiff worked for Summit at a job site in Mecklenburg County, Charlotte, North Carolina.

6. Plaintiff seeks damages in a sum sufficient that subject matter jurisdiction is properly vested in the Superior Court division pursuant to N.C.G.S. § 7A-243.

7. Venue is proper in Mecklenburg County under N.C. Gen. Stat. §§ 1-80(2) and 1-82.

## III.    FACTUAL STATEMENT

### A. <u>Background.</u>

8. On June 4, 2015, Summit hired Justin to work as an assistant superintendent at a job site in Columbia, South Carolina. Shortly thereafter, Summit changed course and abruptly

2

assigned him to the Circle University City Apartments job in Charlotte, North Carolina. Since the employees often had to travel for work, Summit paid for them to stay at the Extended Stay America hotel located on N. Tryon Street.

9. Justin was in for a rude awakening at the job site. The head superintendent, Doe, frequently got drunk during lunch, and acted in a belligerent and threatening manner to many around the job site. Unfortunately, Justin bore the brunt of his attacks. Upon information and belief, Doe used the company credit card to purchase the food and alcohol that he drank during lunch, and even did so with Company executives on occasion.

10. As Assistant Superintendent, Justin received several complaints about Doe's misconduct from engineers, inspectors, and subcontractors. Justin knew he had to report Doe to his bosses because his actions were so threatening that the worksite was becoming an unsafe environment.

11. Upon information and belief, Summit policy or contractual obligations prohibited drinking on the job site and doing so was grounds for disciplinary action.

**B. Events Leading Up to the Attack.**

12. On or around June 23, 2015 Justin reported Doe's misconduct to Project Manager, Steve Fudge. Fudge simply stated that he was retiring soon and did not want to get involved with the matter. Upon information and belief, Summit took no disciplinary action against Doe. Justin next called the president of Summit, Marc Padgett, on or around July 15, 2015, and told him (among other things) that he felt unsafe working with Doe. Padgett gave lip service to correcting the problem. Justin also reported that Doe was using the company credit card to drink at lunch.

3

13. On July 18, 2015, General Superintendent, Tom Borne, visited the job site and met with Justin. Justin relayed his concerns regarding Doe, but Borne told Justin that "he was going to have to deal with it; we're not removing Doe because then we would have to explain it to Crescent and we would look bad." Crescent is the company that contracted with Summit to perform the construction work. Upon information and belief, Borne, Doe, and others went out to lunch that same day and alcohol was consumed.

**C. The Attack.**

14. On July 20, 2015, at approximately 8:30 p.m. Justin arrived at the Extended Stay America Hotel. Justin got out of his vehicle and started to walk inside. Before reaching the rear entrance, Doe and another employee called out to Justin. Justin turned around to make his way over to them and noticed the individuals leaning against their vehicle. Doe appeared intoxicated and drinking a beer. Doe told Justin that he was re-assigning half of his workers to another building and instructed him to double the current production rate with the remaining workers. Justin replied that the men were already working twelve hours a day and falling asleep on the floor. Justin told Doe that if Summit pushed them any harder, somebody was going to get hurt. Justin also told him that there were no inspectors working in the evening to examine the site for safety. When Justin told him he was asking for the impossible and setting him up for failure, Doe walked up close to Justin and bellowed, "you're going to fucking figure it out or I'll fire you." Justin told Doe he had done everything he could to him and that if he wanted to fire him to go ahead.

4

15. At that point, Doe physically attacked Justin. Doe wrestled Justin to the ground. He began repeatedly punching him in the face and beating his head into the pavement. Doe yelled that Justin was [f...ing] fired and to get all his shit and get off the job.

16. Doe disappeared before the police arrived.

**D. The Aftermath.**

17. Though bloodied and in pain, Justin called Fudge and reported the attack. Fudge only asked whether Justin was going to blame him for being aware of Doe's threatening behavior and Justin's complaints.

18. Justin's father raced to the scene and drove him to the hospital where Justin was diagnosed with head trauma. His severely swollen jaw left him barely able to speak. He had to be on bed rest for a few days. On July 21, 2015, the day after the incident, Justin again called Steve Fudge but never received a call back.

19. After Justin was cleared to return to work on July 24, 2015, his company phone locked up. Justin then attempted several times to get in touch with Fudge using his personal phone by texting, calling, and/or emailing, but Fudge never responded. With no response from his project manager Justin deduced the obvious—Summit terminated him. Soon after, Summit also fired his father. Yet, upon information and belief, Summit saw fit to continue employing Doe.

5

## IV.    LEGAL CLAIMS

### Count I
#### *(North Carolina Retaliatory Employment Discrimination Act)*

20. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

21. Defendant employed more than 15 employees at all relevant times.

22. The North Carolina Retaliatory Employment Discrimination Act, N.C.G.S. § 95-241 ("REDA") prohibits employers from taking retaliatory action against an employee if they "[f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to" the Workers' Compensation Act, N.C. Gen. Stat. § 97-1 et seq. or the Occupational Safety and Health Act of North Carolina ("OSHA"), N.C. Gen. Stat. § 95-126 et seq. See N.C. Gen. Stat. Ann. § 95-241(a). Retaliatory action includes, but is not limited to: discharge, demotion, retaliatory relocation of an employee, or other adverse employment action taken against an employee in the terms, conditions, privileges, and benefits of employment.

23. Plaintiff engaged in protected activity by repeatedly reporting to company executives that Doe was abusing alcohol on the job, acting in a threatening manner on the job site and otherwise conveying himself as a safety threat.  Plaintiff also engaged in protected activity by refusing to follow instructions that would have endangered workers on the job site.

24. Defendant violated REDA by terminating Plaintiff because he complained internally to Company executives about what he believed in good faith to be possible OSHA violations.

6

25. Defendant further violated REDA by terminating Plaintiff because of a work-related injury and in anticipation of Plaintiff filing a workers compensation claim.

26. As a proximate result of Defendant's conduct, Plaintiff has suffered damages including, but not limited to: lost wages, severe emotional distress, humiliation, anxiety, medical expenses, and other compensatory damages in a sum sufficient that subject matter jurisdiction is properly vested in the Superior Court divisions pursuant to N.C. Gen. Stat. § 7A-243.

27. Defendant's actions were done in bad faith and in a manner that demonstrates an unreasonable and reckless disregard for Plaintiff's rights such that treble damages are appropriate.

<u>**Count II**</u>
*(Wrongful Discharge in Violation of North Carolina Public Policy)*

28. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

29. The public policy of the State of North Carolina, as set forth in REDA, prohibits employers from taking retaliatory action against an employee who reports safety and health concerns or who refuses to engage in conduct that would violate said statute.

30. The public policy of the State of North Carolina, as set forth in the Occupational Safety and Health Act of North Carolina, N.C.G.S. § 95-126 ("OSHA"), prohibits employers from taking retaliatory action against an employee who reports safety and health concerns, who refuses to engage in conduct that would violate said statute, or who is a victim of a workplace violence incident.

7

31. Defendant violated these public policies by terminating Plaintiff after he reported that his supervisor abused alcohol while on the job, to the point that Doe became threatening and caused many workers to be uncomfortable, as this was a safety and health concern. Such employer conduct has a tendency to be injurious to the public policy of North Carolina and against the public good.

32. Defendant further violated North Carolina public policy by terminating Plaintiff for exercising his rights under North Carolina law to call the police after he was attacked as set forth under N.C.G.S. § 95-260, N.C.G.S § 14-33 and/or N.C.G.S. § 14-277.1.

33. As a proximate result of Defendant's wrongful conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, and expenses, and other damages and entitled to recover compensatory damages in an amount sum sufficient that subject matter jurisdiction is properly vested in the Superior Court division pursuant to N.C.G.S. § 7A-243.

34. Defendant's actions were done maliciously, willfully or wantonly and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, managers, and directors participated in and condoned the conduct described above. As a result, Plaintiff is entitled to recover punitive damages from Defendant pursuant to N.C. Gen. Stat. § 1D-15 in an amount sufficient that subject matter jurisdiction is properly vested in the Superior Court division pursuant to N.C.G.S. § 7A-243.

### Count III
*(Battery)*

35. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

8

36. Doe intentionally pushed, punched and bashed Plaintiff several times on July 20, 2015, as alleged in detail above.

37. These acts caused harmful and offensive contact with Plaintiff.

38. Doe intended to cause such harmful and offensive contact with Plaintiff.

39. Doe did not have permission or any consent whatsoever to attack Plaintiff.

40. Doe lacked any privilege in touching Plaintiff on July 20, 2015.

41. Doe's actions actually and proximately caused Plaintiff damages. As a proximate result of Doe's wrongful conduct, Plaintiff has suffered severe emotional distress, anxiety, and humiliation, and is entitled to recover compensatory damages.

42. Doe's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights.

43. Defendant is responsible for Doe's battery through the doctrines of respondent superior, ratification, and agency. Doe's battery was committed at the hotel paid for entirely by Defendant. The incident occurred while Doe was working within the scope of his employment and in furtherance of Defendant's business to go over expectations for production goals with employees. In his role as an officer, director, manager, principal and/or owner of Defendant, Doe expressly authorized his actions constituting battery. Doe engaged in this tortious conduct while in the parking lot of the hotel, paid for by the Defendant, for all the employees on the job. Defendant ratified Doe's actions by refusing to discipline or reprimand him even though it was aware that Doe had threatened and made Plaintiff feel unsafe on multiple occasions in the past and used Defendant credit card to purchase alcohol.

9

Likewise, Defendant ratified Doe's conduct by continuing to employ him and/or by re-hiring him.

44. Defendant's actions were done in bad faith and in a manner that demonstrates an unreasonable and reckless disregard for Plaintiff's rights. Defendant's actions were malicious, willful and wanton. Defendant's officers, managers, and directors participated in and condoned the conduct described above, and as a result, Plaintiff is entitled to recover punitive damages from Defendant pursuant to N.C. Gen. Stat. § 1D-15.

## Count IV
### (Intentional Infliction of Emotional Distress)

45. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

46. Doe's conduct exceeds all bounds usually tolerated by a decent society and was done willfully, maliciously, and deliberately with the intent to cause Plaintiff severe mental pain and emotional distress, or with reckless indifference to the likelihood that such behavior would cause severe emotional distress and with utter disregard for the consequences of such actions.

47. Separate and apart from its own tortious conduct, Defendant is responsible for the tortious acts of Doe because: (1) his actions were expressly authorized by Defendant and (2) Doe's actions were ratified by Defendant to the extent it knew of Doe's actions and failed to take appropriate and effective measures against him.

48. Defendant's behavior and conduct in this case also exceeds all bounds usually tolerated by a decent society and was done willfully, maliciously, and deliberately with the

10

intent to cause Plaintiff severe mental pain and emotional distress, or with reckless indifference to the likelihood that such behavior would cause severe emotional distress, and with utter disregard for the consequences of such actions.

49. It shocks the conscience that Defendant turned a blind-eye towards Plaintiff's complaints regarding Doe given the outrageous and tortious manner in which he treated Plaintiff.

50. It also shocks the conscience that Defendant would allow Doe to remain employed and leave Plaintiff vulnerable to a foreseeable escalation and attack.

51. As a proximate and foreseeable result of Defendant's conduct, Plaintiff has suffered severe emotional distress, severe mental anguish and anxiety, humiliation, embarrassment, expenses, his peace of mind has been disturbed, and other damages in a sufficient amount to invoke Superior Court jurisdiction under N.C.G.S. §7A-243 and is entitled to recover compensatory damages in an amount sufficient to invoke Superior Court jurisdiction under N.C.G.S. §7A-243. Plaintiff has received medical treatment for said severe emotional distress.

52. Defendant's actions were done maliciously, willfully, or wantonly, or in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages in an amount sum sufficient that subject matter matter jurisdiction is properly vested in the Superior Court division pursuant to N.C.G.S. § 7A-243.

11

## Count V
### (Negligent Hiring, Retention and/or Supervision)

53. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

54. At all times alleged herein, Defendant had a duty to exercise due care in the supervision, retention, and hiring of its employees, and had a duty to protect its employees from violent acts in the workplace.

55. Defendant was negligent in its supervision and retention of Doe, in that Defendant knew or should have known of Doe's threatening, belligerent and drunken conduct during his employment with Defendant or possibly in his pervious employment elsewhere.

56. Defendant was further negligent in that it knew or should have known in the exercise of reasonable care, based on Doe's prior tortuous actions and Plaintiff's reports that he feared for his safety, that Doe had a propensity to engage in further unlawful tortious conduct toward Plaintiff and that such conduct would have resulting injurious effects on Plaintiff. But for Defendant's negligence, Plaintiff would not have suffered subsequent tortious conduct and damages.

57. Defendant's negligence actually and proximately caused Justin damages. As a proximate result of Defendant's wrongful conduct, Plaintiff has suffered severe emotional distress, anxiety, and humiliation, and is entitled to recover compensatory damages.

58. Defendant's actions were done maliciously, willfully, or wantonly, or in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's

12

conduct, Plaintiff is entitled to recover punitive damages in an amount sum sufficient that subject matter matter jurisdiction is properly vested in the Superior Court division pursuant to N.C.G.S. § 7A-243.

59. Defendant's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## JURY TRIAL DEMANDED

WHEREFORE, the Plaintiff prays the Court to:

1. Enter a judgment against the Defendant and order Defendant to pay Plaintiff compensatory damages in excess of an amount sum sufficient that subject matter jurisdiction is properly vested in the Superior Court division pursuant to N.C.G.S. § 7A-243, treble damages and punitive damages;

2. Award Plaintiff all reasonable costs and attorneys' fees incurred in connection with this action;

3. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

4. Grant Plaintiff a trial of this matter by a jury.

13

This the 24th day of October 2016.

Joshua R. Van Kampen
North Carolina Bar No. 32168
Kevin P. Murphy
North Carolina Bar No. 41467
Van Kampen Law, PC
315 East Worthington Avenue
Charlotte, North Carolina 28203
Phone: (704) 247-3245
Fax: (704) 749-2638
Email: josh@vankampenlaw.com
Email: kevin@vankampenlaw.com
*Attorneys for Plaintiff*

14