| | | |
|---|---|---|
| JUSTIN DRISKELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| SUMMIT CONTRACTING GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

THIS MATTER is before the Court upon Defendant's Motion to Stay of Execution Pending Post-Trial Motions (Doc. No. 54); Defendant's Renewed Motion for Judgement as a Matter of Law, For a New Trial, and Motion to Order Plaintiff to Elect Remedies (Doc. No. 61); Plaintiff's Motion for Additional Findings and Amended Judgment (Doc. No. 64), and Defendant's Motion to Stay of Execution by Supersedeas Bond (Doc. No. 82). These motions are now ripe for resolution.[1] The Court addresses each motion but not necessarily in the order filed.

## I. BACKGROUND

In the interests of judicial economy, the Court provides a general overview of the case here and summarizes the specific background relevant to the issues raised by the parties' motions in the analysis. This matter arises from the conclusion of Justin Driskell's ("Plaintiff") employment with Summit Contracting Group, Inc. ("Defendant") in 2015 after Plaintiff's supervisor, Daniel Rhyner, engaged in a physical altercation with Plaintiff. Defendant is a Florida-based general contractor focusing its business on multi-family construction projects across the nation. Defendant employed

---

[1] As reflected on the record, Plaintiff declined to file a reply to Defendant's Memorandum in Opposition of Plaintiff's Motion to Alter Judgement (Doc. No. 72).

Plaintiff as an Assistant Superintendent from June 4, 2015, until July 24, 2015. After a five day

trial, the jury returned a verdict in Plaintiff's favor finding that Defendant terminated Plaintiff's

employment and in doing so, violated North Carolina's Retaliatory Employment Discrimination

Act ("REDA") and North Carolina public policy. (Doc. No. 52, pp. 1-2). The jury found Plaintiff

was entitled to $65,000 for the REDA claim and the wrongful discharge in violation of public

policy claim. Id. The jury also returned a verdict in favor of Plaintiff for his battery, negligent

supervision, and retention claims and awarded him $4,000 for each count. Id. at 2-3.

The Clerk entered judgment consistent with the jury's verdict on February 6, 2018 (Doc.

No. 53). The parties timely filed the instant post-trial motions.

## II. ANALYSIS

### A. Defendant's Renewed Motion for Judgement as a Matter of Law

#### 1. Legal Standard

A motion under Rule 50(b) "assesses whether the claim should succeed or fail because the

evidence developed at trial was insufficient as a matter of law to sustain the claim." Belk, Inc. v.

Meyer Corp., 679 F.3d 146, 155 (4th Cir. 2012). The moving party must have moved under Rule

50(a) for relief on similar grounds to move after trial under Rule 50(b). See Fed. R. Civ. P. 50;

Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008). Failure to move under Rule 50(a)

and appraise the court of the alleged insufficiency of the suit results in waiver of that unraised

insufficiency. See Varghese v. Honeywell Int'l, Inc., 424 F.3d 411, 423 (4th Cir. 2005); Price v.

City of Charlotte, N.C., 93 F.3d 1241, 1248–49 (4th Cir. 1996); Bridgetree, Inc. v. Red F.

Marketing LLC, No. 3:10-cv-00228-FDW-DSC, 2013 WL 443698, at *17 (W.D.N.C. Feb. 5,

2013). When considering a Rule 50 motion, the court cannot reweigh the evidence or consider the

credibility of the witness and must view "all the evidence in the light most favorable to the prevailing party and draw all reasonable inferences in [the prevailing party's] favor." <u>Konkel v. Bob Evans Farms, Inc.</u>, 165 F.3d 275, 279 (4th Cir. 1999). A jury's verdict will withstand a motion under Rule 50 unless the court "determines that the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party." <u>Tools USA and Equip. Co. v. Champ Frame Straightening Equip., Inc.</u>, 87 F.3d 654, 656-57 (4th Cir. 1996) (quoting <u>Winant v. Bostic</u>, 5 F.3d 767, 774 (4th Cir. 1993)); <u>see also</u> <u>Konkel</u>, 165 F.3d at 279. When ruling on a motion under Rule 50(b), the court may allow judgment on the verdict, order a new trial, or direct entry of judgment as a matter of law. Fed. R. Civ. P. 50(b).

### 2. REDA Claim

REDA prohibits employers from taking retaliatory actions against an employee who "in good faith does or threatens to . . . [f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other actions . . . with respect to [OSHA]. N.C.G.S § 95-241(a) (2017). To succeed on a REDA claim, a plaintiff must prove that: "(1) he exercised his rights to engage in protected activity . . . ; (2) he suffered an adverse employment action; and (3) a causal connection exists between the exercise of the protected activity and the alleged retaliatory action." <u>Nguyen v. Austin Quality Foods, Inc.</u>, 974 F.Supp.2d 879, 882-83 (E.D.N.C. 2013). Once the plaintiff can establish a prima facie showing of a REDA violation, "the burden shifts to the defendant to show that it would have taken the same unfavorable action in the absence of the protected activity of the employee." <u>Id.</u>

Defendant argues Plaintiff failed to make a prima facie showing of a REDA violation on a number of grounds: (1) Plaintiff did not suffer an adverse employment action; (2) Plaintiff did not

engage in protected activity; (3) Plaintiff did not prove that Defendant's explanation for the termination was pretext; (4) there was no "but for" causation between Plaintiff's complaint or threatened complaint and Defendant's termination of Plaintiff; (5) Plaintiff failed to exhaust his administrative remedies before pursing judicial relief; and (6) the Court used the wrong standard when instructing the jury on what constitutes protected activity. (Doc. No. 62, pp. 4-10). Each argument will be addressed in turn.

Defendant first argues Plaintiff did not suffer an adverse employment action because Plaintiff admitted he resigned from his position with Summit on a subsequent job application. (Doc. No. 62, p. 5). The jury was specifically asked whether Defendant terminated Plaintiff, and in Question One of the jury verdict form, (Doc. No. 52, p. 1), found the termination took place. Although Plaintiff admitted to indicating resignation from Summit on an employment application, Plaintiff testified that he lied on the job application in hopes that he would be hired. (Doc. No. 73, p. 267). Plaintiff also provided testimony that he intended to return to work at Summit and only concluded he had been fired when his supervisors did not return his texts or calls about returning to work. Id. at 157-61. By questioning the credibility of Plaintiff's testimony, Defendant is essentially asking this Court to re-weigh evidence and evaluate the facts – a task which rests solely with the jury. This Court will not re-weigh any evidence so long as Plaintiff has provided sufficient factual basis to allow a reasonable jury to determine that Plaintiff suffered an adverse employment action, and here, Plaintiff has met his burden.

Defendant next argues Plaintiff did not engage in protected activity as a matter of law. An employee engages in protected activity under REDA when he "in good faith does or threatens to . . . [f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other

action, or testify or provide information to any person with respect to" the Occupational Safety and Health Act of North Carolina ("OSHA"). N.C. Gen. Stat. § 95-241(a)(1)(b) (2017). "By its plain language, it is clear that REDA does not limit protected activities to the sole act of filing a formal claim under [OSHA]." Pierce v. Atl. Grp., Inc., 724 S.E.2d 568, 574 (N.C. Ct. App. 2012) (quoting Jurrissen v. Keystone Foods, LLC, No. 1:08CV128, 2008 WL 3925086, at *5 (M.D.N.C. Aug. 20, 2008)). On the other hand, "merely talking to an internal supervisor about potential safety concerns is not a 'protected activity' under REDA." Id. (quoting Jurrissen, 2008 WL 3925086, at *5); see Delon v. McLaurin Parking Co., 367 F. Supp. 2d 893, 902 (M.D.N.C.), aff'd, 146 F. App'x 655 (4th Cir. 2005) (concluding that a mere "complaint to a manager about a supervisor" is not protected under REDA).

As to this issue, the Court instructed the jury that communication to Marc Padgett, the CEO of Summit, about a health and safety risk is protected activity as a matter of law. As Plaintiff's REDA claim is based on North Carolina state law, this Court looked to Pierce v. Atlantic Group, Inc., 724 S.E.2d 568 (N.C. Ct. App. 2012), for guidance. In Pierce, the North Carolina Court of Appeals held that "merely talking to an internal supervisor . . . is not protected activity under REDA." Pierce, 724 S.E.2d at 574 (citation and quotation omitted). The court did not find any protected activity when the plaintiff "spoke only to his supervisors about his concerns regarding the certification of riggers." Id. at 575. Further, the U.S. District Court for the Eastern District of North Carolina interpreted Pierce to mean that an employee must do more than "merely raise[] his concerns to his supervisors," or "inquir[e]" about his concerns. Hadley v. Duke Energy Progress, Inc., 2016 WL 1071098 at *7 (E.D.N.C. Mar. 17, 2016). In Hadley, the court found no protected activity when the plaintiff "inquired with [the defendant's] human resources department about his

wages." <u>Id.</u> at *8.

Here, the Court determined Plaintiff presented sufficient evidence under applicable law to instruct the jury that *repeatedly* communicating serious *health and safety* concerns to the CEO of the company was more than "merely talking to an internal supervisor" or "inquiring about his concerns." <u>Id.</u> at *7. The Court acknowledges Defendant's arguments about this instruction to the extent they were raised in the charge conference; however, Defendant has not provided any basis for this Court to conclude its instruction unfairly prejudiced the Defendant. The Court sees no error in its instruction to the jury.

Third, Defendant argues the Court erred in its jury instruction regarding pretext because Plaintiff never proved Defendant's explanation for terminating his employment was pretextual. As to the jury instruction, the Court based its determination on an authority cited by *Defendant*, <u>Drummond v. Mabus</u>, 2016 WL 4921424 (E.D.N.C. Sept. 15, 2016), during the charge conference in support of its proffered jury instruction. (Doc. No. 76, p. 53). The Court took its instruction directly from the language in <u>Drummond</u>, a case that was brought to the attention of the Court by Defendant itself. (Doc. No. 76, pp. 58, 66-67); <u>Drummond</u>, 2016 WL 4921424 at *6. Defendant has not provided the Court with any basis to conclude this Court's instruction, taken from Defendant's own legal authority, unfairly prejudiced the Defendant.

Given the Court's conclusion that its jury instruction regarding pretext was an accurate statement of law, Defendant's argument that Plaintiff failed to prove pretext is simply an attempt to relitigate the evidence. Regardless, North Carolina courts have held an employer's negative reference to "costs" in the context of a REDA claim can "easily be interpreted as referring to the cost of plaintiff's worker's compensation claim." <u>McDowell v. Cent. Station Original Interiors,</u>

Inc., 712 S.E.2d 251, 255 (N.C. Ct. App. 2011). Plaintiff's Trial Exhibit 61 indicates Summit's Chief Administrative Officer negatively referenced the costs associated with OSHA accident reports. (Doc. No. 69-15, p. 1). This, along with the other evidence showing that Summit's senior staff complained about the burden caused by Plaintiff's complaints of safety risks, is sufficient for a reasonable jury to find in favor of Plaintiff on the issue of pretext.

Fourth, Defendant argues the evidence presented at trial is insufficient to support a causal connection between Plaintiff's complaint or threat to complain about his safety concerns and his termination from Summit. Defendant cites Greene v. Dialysis Clinic, Inc., 159 F.Supp.2d 228 (W.D.N.C. 2001), in support of its contention. However, Defendant fails to acknowledge that Greene would find a prima facie case of REDA discrimination, and thus a causal connection, when there is temporal proximity between the retaliatory action and the filing of or threat to file a claim. See id. at 233-34 (citation and quotation omitted) (finding no prima facie case of REDA discrimination when Plaintiff's "discharge occurred over two years after" the injury for which Plaintiff filed a claim). Here, Plaintiff's testimony at trial indicated that only days elapsed between his altercation with Mr. Rhyner, his indication to Summit that he would file a police report about the battery, his safety complaints to Mr. Padgett, and his discharge. (Doc. No. 73, pp. 153-61). This evidence is sufficient for a reasonable jury to conclude, because of the temporal proximity between the events at issue, the cause of Plaintiff's discharge was his police report and safety complaints to Mr. Padgett.

Fifth, Defendant argues Plaintiff could not have pursued a workers' compensation theory of retaliation because Plaintiff failed to exhaust his administrative remedies when he failed to raise any workers' compensation related issues in his REDA charge with the NCDOL. Defendant relies

on <u>Lockie v. Staples Contract and Commercial, Inc.</u>, 2015 WL 93643 (W.D.N.C., Jan 7, 2015), where this Court held a plaintiff's "REDA-based wrongful discharge claim must be dismissed based on [the] failure to exhaust . . . administrative remedies."

However, Defendant failed to acknowledge that exhaustion of administrative remedies for a REDA claim to survive only requires "an initial filing of a written complaint with the Commissioner of Labor alleging the statutory violation, obtaining a right-to-sue letter, and commencing a civil action with ninety days of the letter's issuance." <u>Id.</u> at *4. Only "where it is undisputed that Plaintiffs have 'never filed an administrative charge with the Department of Labor, their REDA claim and derivate public policy claim are barred.'" <u>Johnson v. North Carolina</u>, 905 F.Supp.2d 712, 728 (W.D.N.C. 2012) (quoting <u>Hurth v. Bradman Lake Group Ltd.</u>, 2009 WL 2497993 at *6 (W.D.N.C. Aug. 14, 2009)); <u>see also</u> <u>Satterwhite v. Wal-Mart Stores East, L.P.</u>, 2012 WL 255347 at *3 (E.D.N.C. Jan. 26, 2012) (dismissing a REDA claim where the Plaintiff did not file a complaint with the NCDOL at all).

Defendant further argues Plaintiff's claim was not exhausted because he did not allege the proper statutory violation in his charge with the NCDOL and the letter sent to the NCDOL by Plaintiff's attorney clarifying the statutory violations was not sufficient based on the holding in <u>Balas v. Huntington Ingalls Indus., Inc.</u>, 711 F.3d 401, 408 (4th Cir. 2013) (holding that a "private letter" to the EEOC is not enough to formally amend an EEOC charge). However, this Court declines to extend the holding set forth in a case interpreting federal law to the present case, where North Carolina state law controls. The North Carolina legislature has indicated that a right-to-sue letter may be requested from the NCDOL "after ninety (90) days following the filing of a complaint if the Commissioner has not issued a notice of conciliation failure and has not commenced an

action." N.C. Gen. Stat. § 95-242(c) (2017).

Here, Plaintiff filed a complaint with the NCDOL and when the Commissioner failed to take any action, Plaintiff's attorney requested a right-to-sue letter after the requisite ninety days. (Doc. No. 69-14). As such, Defendant's argument that Plaintiff did not exhaust his administrative remedies prior to filing this action is without merit.

Finally with respect to Plaintiff's REDA claim, Defendant argues the Court used the wrong standard in instructing the jury on when Plaintiff engaged in protected activity. In its brief, Defendant contends the Court instructed the jury that "Plaintiff engaged in protected activity merely if Summit 'believed' that Plaintiff **might** file a workers' compensation claim." (Doc. No. 62, p. 9) (emphasis in original). Contrary to Defendant's contention, the Court instructed the jury that "it is against the law for an employer to terminate an employee because the employer believes the employee *will* file a workers' compensation claim." (Doc. No. 77, p. 123) (emphasis added). This instruction is an accurate representation of the law set forth in Abels v. Renfro Corp., which held that evidence showing an employer "anticipated" an employee to file a good-faith workers' compensation claim and fired the employee in reaction to the anticipated claim is sufficient to conclude that a wrongful and retaliatory discharge has occurred. 436 S.E.2d 822, 826 (N.C. 1993).

Defendant further argues Abels is inapplicable here because it interpreted a statute that was repealed and replaced by REDA, which serves as a narrower limitation on what constitutes protected activity. While Defendant is correct in noting that REDA replaced the statute at issue in Abels, REDA was actually an attempt by the North Carolina General Assembly to expand upon the situations in which "employees could pursue remedies under the Workers' Compensation Act without fear of retaliation from their employers." See Johnson v. Trs. of Durham Tech. Cmty.

Coll., 535 S.E.2d 357, 361 (N.C. Ct. App. 2000) (quotation and citation omitted) (explaining that the General Assembly expanded the definition of retaliation when it enacted REDA). Defendant's argument that REDA is a narrower limit on protected activity than what was set forth in Abels is without merit.

For the foregoing reasons, Defendant is not entitled to judgment as a matter of law on Plaintiff's REDA claim.

### 3. Wrongful Discharge in Violation of Public Policy

Employment in North Carolina is "generally terminable by either the employer or employee for any reason where no contract exists specifying a definite period of employment." McDonnell v. Guilford County Tradewind Airlines, Inc., 670 S.E.2d 302, 305 (N.C. Ct. App. 2009) (citation omitted). However, at-will employment may not be terminated "based on some activity by the employer contrary to law or public policy." Id. "To prevail on a claim for unlawful termination in violation of public policy 'a plaintiff must identify a specified North Carolina public policy that was violated by an employer in discharging the employee.'" Id. (quoting Salter v. E & J Healthcare, Inc., 575 S.E.2d 46, 52 (N.C. Ct. App. 2003)).

Defendant argues Plaintiff failed to establish a prima facie case of wrongful discharge in violation of public policy for the same reasons in the REDA claim discussed above and that the public policy claimed to be violated – an employee reporting health and safety violations and an assault on their person – is not a valid basis for a wrongful discharge claim. To the extent the Defendant is attempting to relitigate the facts in regards to its argument that Plaintiff failed to establish a prima facie claim of wrongful discharge, the Court incorporates its above discussion regarding the REDA claim herein; Plaintiff has presented sufficient evidence for a reasonable jury

to find in its favor.

Defendant's argument that an employee reporting an assault on their person is not a valid basis for a wrongful discharge claim does not gain any more traction now than it did during the charge conference. Defendant's reliance on McQueen v. City of Hamlet, 2010 WL 5135546 (N.C. Ct. App., Dec. 7, 2010) and Bombria v. Lowe's Home Centers, Inc., 2014 WL 218545 (N.C. Ct. App., Jan. 21, 2014) is misplaced. In both cases, the North Carolina Court of Appeals dismissed the plaintiff's wrongful discharge claim because neither plaintiff alleged any specified public policy, statute, or constitutional provision that the employer's conduct violated. See McQueen, 2010 WL 5135546 at *4 ("Plaintiff failed to allege specific violations of public policy by Defendants sufficient to support a claim for wrongful termination in violation of public policy."), see also Bombria, 2014 WL 218545 at *4 ("[W]e conclude that an essential element of plaintiff's claim for wrongful termination – namely, that plaintiff's employment was terminated in violation of a *specified* North Carolina public policy – is nonexistent." (emphasis added)).

Here, Plaintiff has referenced specific North Carolina statutes – N.C. Gen. Stat. §§ 14-33, 14-211.1 – in support of his argument that Defendant violated North Carolina public policy. As there is no North Carolina case law directly on point, this Court finds Plaintiff's reliance on Lenzer v. Flaherty, 418 S.E.2d 276 (N.C. Ct. App. 1992), to be persuasive. Lenzer indicated there will likely be a wrongful discharge in violation of public policy when an employee is discharged for reporting a violation of a state statute. See Lenzer, 418 S.E.2d at 287 ("[D]ischarge resulting from a report made pursuant to N.C.G.S. § 122C-66 would give rise to a cause of action for wrongful discharge under the public policy exception to the at-will doctrine.").

To the extent Defendant argues the Workplace Violence Prevention Act ("WVPA") is

inadequate to support Plaintiff's wrongful discharge claim, the Court notes Plaintiff never pursued a theory of wrongful discharge under this statute at trial. Thus, Defendant's reliance on this argument is misplaced. Defendant has provided no persuasive reason for this Court to conclude that no reasonable jury could have found in favor of Plaintiff as a matter of law on the wrongful discharge in violation of public policy claim. Accordingly, Defendant is not entitled to judgment as a matter of law on the wrongful discharge claim.

### 4. Tort Claims

Defendant argues it is not liable to Plaintiff for his tort claims (battery and negligent supervision and retention) because the North Carolina Worker's Compensation Act ("NCWCA") bars the claims. The NCWCA is the "exclusive remedy in the event of the employee's injury by accident in connection with employment." Reece v. Forga, 531 S.E.2d 881, 883 (N.C. Ct. App. 2000). The NCWCA covers those "injur[ies] [caused] by accident arising out of and in the course of the employment." N.C. Gen. Stat. § 97-2(6) (2017). The undisputed evidence presented at trial indicates the altercation was work-related; it occurred on premises paid for by Defendant, and it arose out of a work-related conversation. (Doc. No. 73, p. 220). For the reasons that follow, this Court finds the NCWCA as the sole remedy for Plaintiff's torts claims such that Defendant is not liable to Plaintiff for battery and negligent retention and supervision.

"With respect to a corporate employer, North Carolina's Worker's Compensation Act provides the exclusive remedy for incidents of battery . . . by a co-worker unless the tortfeasor was acting as the alter ego of the company." Parks v. OS Rest. Servs. LLC, 2018 WL 2190809 at *2 (M.D.N.C. May 11, 2018) (citing Herring v. F.N. Thompson, Inc., 866 F.Supp. 264, 267 (W.D.N.C. 1994) (citing Daniels v. Swofford, 286 S.E.2d 582, 585-86 (N.C. Ct. App. 1982)); N.C.

Gen. Stat. § 97-10.1). A co-worker will be acting as the alter ego of the company when the plaintiff can allege "*actual intent* to injure on the part of the corporate employer." Parks, 2018 WL 2190809 at *2 (emphasis added). In Parks, the court dismissed the plaintiff's claim when her only allegation was the "[c]orporate Defendants . . . subsequently ratified" the tortious actions of a co-worker. Id.

Here, Plaintiff has not alleged actual intent to injure on the part of Defendant. Plaintiff argues Defendant subsequently ratified the tortious actions of his co-worker Mr. Rhyner, an argument which was clearly rejected in Parks. Plaintiff relies on Hogan v. Forsyth Country Club Co., to argue the battery did not arise out of employment because it was not a "natural and probable consequence or incident of the employment," 340 S.E.2d 116, 124 (N.C. Ct. App. 1986); however, subsequent cases have rejected this argument. See Evans v. Federated Mut. Ins. Co., 2014 WL 3728468 at * 2 (E.D.N.C. July 24, 2014) (rejecting plaintiff's reliance on Hogan for an intentional tort claim against a corporate defendant); see also Riley v. Debaer, 562 S.E.2d. 69, 72-73 (Ct. App. N.C. 2002) (declining to follow Hogan where plaintiff's claim centered on a tortious injury allegedly caused by defendant's mishandling of a worker's compensation claim). As further explained above, the Court concludes the altercation was work-related and accordingly finds that the NCWCA is the exclusive remedy for Plaintiff's battery claim.[2] Accordingly, Defendant is entitled to judgment as a matter of law as to Plaintiff's battery claim.

Plaintiff's negligent retention and supervision claim is also barred by the NCWCA. The Fourth Circuit has "interpreted North Carolina law to require a common-law tort to underly a negligent retention and supervision claim." Johnston v. Leith, Inc., 2011 WL 1770434 at *7

---

[2] If Plaintiff wanted to recover for the battery, he could have sued Mr. Rhyner himself. Plaintiff made a tactical decision not to sue Mr. Rhyner when he voluntarily dropped the criminal charges and declined to seek monetary damages against him. (Doc. No. 73, p. 243).

(E.D.N.C. May 9, 2011) (citing <u>McLean v. Patten Cmtys. Inc.</u>, 332 F.3d 714, 719 (4th Cir. 2003)). Additionally, any negligence claim against an employer by an employee is "likely barred by exclusivity provision of [the NCWCA]." <u>Brown v. Sears Auto. Ctr.</u>, 222 F.Supp.2d 757, 761 n. 7 (M.D.N.C. 2002). Because Plaintiff does not have a valid tort claim against Defendant to serve as the basis for the negligent retention and supervision claim, this claim must fail as well. Defendant is entitled to judgment as a matter of law on Plaintiff's negligent retention and supervision claim.

### 5. Jury Instructions

"District courts are necessarily vested with a great deal of discretion in constructing the specific form and content of jury instructions." <u>Hardin v. Ski Venture, Inc.</u>, 50 F.3d 1291, 1293 (4th Cir. 1995) (citing <u>Price v. Glosson Motor Lines, Inc.</u>, 509 F.2d 1033, 1036 (4th Cir. 1975)). Specific jury instructions "may not be judged in artificial isolation, but must be viewed in the context of the overall charge[,]" <u>Noel v. Artson</u>, 641 F.3d 580, 586 (4th Cir. 2011) (quoting <u>Henderson v. Kibbe</u>, 431 U.S. 145, 153 n. 10 (1977)), for "the charge in its totality was what the jury heard[,]" <u>id</u>. at 586. "Instructions will be considered adequate if construed as a whole, and in light of the whole record, they adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the [objecting] party." <u>Gentry v. E. W. Partners Club Mgmt. Co. Inc.</u>, 816 F.3d 228, 233 (4th Cir. 2016) (quoting <u>Bunn v. Oldendorff Carriers GmbH & Co. KG</u>, 723 F.3d 454, 468 (4th Cir. 2013)).

Defendant has presented a host of instructions on which the Court has allegedly erred in charging the jury. Defendant's arguments, identical to those at trial, are insufficient to show error. In its brief, Defendant has not provided any basis for the Court to conclude that its instructions misled or confused the jury in such a way to prejudice Defendant. Accordingly, Defendant is not

entitled to judgment as a matter of law as to the REDA and WDPP claims because of errors in the jury instructions.

### 6. Evidentiary Errors

Errors in admitting or excluding evidence are not grounds for a new trial "[u]nless justice requires[.]" Fed. R. Civ. P. 61. "A party may claim error in a ruling to admit . . . only if the error affects a substantial right of the party and . . . [the] party, on the record: timely objects or moves to strike; and states the specific grounds, unless it was apparent from the context." Fed. R. Evid. 103(a)(1). An error is harmless and does not require a new trial if the court can "say 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the errors.'" Taylor v. Va. Union Univ., 193 F.3d 219, 235 (4th Cir. 1999) (citations omitted). By focusing on "whether the error itself had substantial influence[,]" this analysis allows the court to distinguish between harmless errors and those impacting a substantial right. Id.

Defendant has also presented a host of alleged evidentiary errors the Court made during the course of this litigation. To the extent these issues were raised throughout this litigation, the Court reiterates its previous rulings. Defendant has failed to present sufficient evidence in its brief detailing how any of the alleged evidentiary errors have affected any substantial right. As such, Defendant is not entitled to judgment as a matter of law as to the REDA and WDPP claims because of any evidentiary errors.

## B. Defendant's Motion for a New Trial

"The grant or denial of a motion for new trial is entrusted to the sound discretion of the district court and will be reversed on appeal only upon a showing of abuse of discretion." Cline

v. Wal-Mart Stores, 144 F.3d 294, 305 (4th Cir. 1998) (citing Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 435 (1996)).  A court may grant a new trial on some or all of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A).  Acceptable reasons include: "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."  Cline, 144 F.3d at 301 (quoting Atlas Food Sys. & Servs., Inc. v. Crain Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996)).  When making this determination, the court may weigh the evidence and consider the credibility of witnesses.  Wilhelm v. Blue Bell, Inc., 773 F.2d 1429, 1433 (4th Cir. 1985) (citing Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888, 891-92 (4th Cir. 1980)).

Defendant moves for a new trial on the same bases for which it moved for judgment as a matter of law.  After a review of the transcripts and evidence presented at trial, the Court incorporates its analysis under Defendant's Renewed Motion for Judgment as a Matter of Law herein.  The Court concludes Defendant has not shown how the jury verdict is against the clear weight of the evidence, is based upon false evidence, or has resulted in the miscarriage of justice.  Accordingly, Defendant's Motion for a New Trial is DENIED.

## C. Defendant's Motion to Order Plaintiff to Elect Remedies

Defendant has also moved this Court to order Plaintiff to elect his remedies.  Pursuant to the foregoing discussion, Plaintiff's tort claims have been dismissed by this Court.  As such, Plaintiff may elect to recover under either his REDA claim or his WDPP claim, but not both, so as to avoid running afoul of the prohibition of double recovery.  See Moretz v. Richards & Assocs.,

<u>Inc.</u>, 327 S.E.2d 290, 294 (N.C. Ct. App. 1985) ("There is a strong public policy against double recovery."). Plaintiff has fourteen (14) days from the date this order is filed to elect his remedies. Plaintiff conceded as much in his proposed jury verdict form. (Doc. No. 39, p. 7) ("Plaintiff has included an instruction that states that amounts awarded under REDA and amounts awarded under [the wrongful discharge] instruction will not be added together."). In light of this ruling, this Court reserves ruling on Plaintiff's Motion for Attorney's Fees and Defendant's Motion for Reduction of Punitive Damages until Plaintiff elects his remedies. [3]

### D. Plaintiff's Motion for Additional Findings and Amended Judgment

#### 1. Legal Standard

Plaintiff moves under Federal Rules of Civil Procedure 52(b) and 59(a)(2) to amend judgment to include interest, treble damages, and to order reinstatement or, in the alternative, front pay. (Doc. No. 65, p. 2). Fed. R. Civ. P. 52(b) – Findings and Conclusions by the Court – allows a court to "amend *its* findings – or make additional findings – and may amend the judgment accordingly." (emphasis added). The "primary purpose" of this rule "is to ensure that the trial court's findings of fact and legal reasoning are clear." <u>Bailey v. Kennedy</u>, 2002 WL 32818915 (W.D.N.C. June 10, 2002) (quoting <u>Haberen v. Kaupp Vascular Surgeons, Ltd.</u>, 151 F.R.D. 49, 50-51 (E.D.Pa. 1993). Motions made under Rule 52(b) "are intended to correct manifest errors of law or fact or to present newly discovered evidence." <u>Goodwin v. Cockrell</u>, 2015 WL 12851581 at *1 (E.D.N.C. Dec. 30, 2015) (quoting <u>Wahler v. Countrywide Home Loans, Inc.</u>, 2006 WL 3327074 at *1 (W.D.N.C. Nov. 15, 2006)). The judgment entered by this Court on February 6, 2018, is based on a jury's findings of fact, not its own findings of fact. Nevertheless, Plaintiff has

---

[3] The Court may order supplemental briefing by the Parties upon Plaintiff's election.

not shown how the jury's award of compensatory and punitive damages are a manifest error. Accordingly, Rule 52(b) is not applicable here and the Court will not address Plaintiff's arguments pursuant to this rule.

Federal Rule of Civil Procedure 59(a)(2) provides "after a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." In the Fourth Circuit, Rule 59(a)(2) has only been addressed when a party has moved for a new trial. See e.g. U.S. v. Timms, 537 Fed. Appx. 265, 267 (4th Cir. 2013) (affirming a district court's denial for a new trial pursuant to Rule 59(a)(2)); see also Williams v. Hous. Auth. of the City of Raleigh, 595 F.Supp.2d 627, 630 (E.D.N.C. 2008) (denying plaintiff's motion for rehearing and reconsideration pursuant to Rule 59(a)(2))). Plaintiff has failed to provide the Court with any Fourth Circuit legal authority in which a litigant has successfully moved for an amended judgment post jury trial pursuant to this rule. Moreover, this Court did not conduct a nonjury trial on this matter, and as such, Rule 59(a)(2) is inapplicable. Burgess v. Hamm, 2013 WL 1338426 at *1 (E.D.N.C. Apr. 1, 2013). Nevertheless, this Court finds Plaintiff's arguments regarding reinstatement, front pay, and apportionment of punitive damages unpersuasive.

### 2. Pre-Judgement Interest

Although this Court does not address Plaintiff's arguments pursuant to Rules 52(b) and 59(a)(2), Federal Rule of Civil Procedure 60(a) allows courts to *sua sponte* "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." A mistake arising from oversight or omission may "occur[] when there is an inconsistency between the text of an order or judgment and the district court's

intent when it entered the order or judgment" or "an unintended ambiguity that obfuscates the court's original intent." Sartin v. McNair Law Firm PA, 756 F.3d 259, 265–266 (4th Cir. 2014). The Court addresses Plaintiff's argument as it relates to pre- and post-judgment interest pursuant to Rule 60(a).

Plaintiff contends it is entitled to prejudgment interest of 8% under N.C. Gen. Stat. § 24-5(b). See also N.C. Gen. Stat. § 24-1. Defendant disagrees and argues the Court has the discretion to award prejudgment interest, and if it does award prejudgment interest, it should be awarded at the federal rate of interest. The Fourth Circuit has recognized that other circuits have held that courts must apply the law of the forum to questions involving prejudgment interest in diversity cases. United States v. Dollar Rent A Car Sys., Inc., 712 F.2d 938, 940 (4th Cir. 1983) (citing Klaxon, 313 U.S. at 497; Clissold v. St. Louis-San Francisco Ry., 600 F.2d 35, 38-39 (6th Cir. 1979); Am. Ins. Co. v. First Nat'l Bank in St. Louis, 409 F.2d 1387, 1392 (8th Cir. 1969)).

In North Carolina, the legislature has enacted a statute governing prejudgment interest that provides "[i]n an action other than contract, any portion of a money judgment designated by the fact finder as compensatory damages bears interest from the date the action is commenced until the judgment is satisfied." N.C. Gen. Stat. § 24-5(b). The statute creates no exceptions or conditions, and in Hamby v. Williams, the North Carolina Court of Appeals held N.C. Gen. Stat. § 24-5(b) "to be mandatory and not discretionary on the part of the trial court, and that the trial court erred in not awarding prejudgment interest to plaintiff." 676 S.E.2d 478, 481 (N.C. Ct. App. 2009). The Fourth Circuit, in an unpublished opinion, also construed N.C. Gen. Stat. § 24-5(b) as a mandatory provision. Castles Auto & Truck Servs., Inc. v. Exxon Corp., 16 F. App'x 163, 168 (4th Cir. 2001) (remanding case for award of prejudgment interest, noting "Although Exxon

inexplicably maintains that § 24–5(b) is discretionary, we conclude that the statute is unambiguously mandatory.").

Accordingly, the Court is persuaded to award prejudgment interest on Plaintiff's compensatory damages for the period from October 24, 2016, to February 6, 2018, at the state of North Carolina's legal interest rate of 8%, N.C. Gen. Stat. §24-1. Plaintiff characterizes the judgment as awarding $69,000 as compensatory damages, and Defendant does not object to this characterization. The Court has already stricken the jury's verdict on the tort claims, which therefore reduces the compensatory damages to $65,000 no matter whether Plaintiff elects to recover under REDA or WDPP. Thus, the Court amends the judgment to reflect that Plaintiff is entitled to 8% prejudgment interest on $65,000 ($14.25 per day) from October 24, 2016, through February 6, 2018, in the total amount of $6,695.89.

### 3. Post-Judgement Interest

Regarding post-judgment interest, 28 U.S.C. § 1961(a) provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." See Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1031 (4th Cir. 1993) ("[F]ederal law mandates the awarding of post-judgment interest."). "Such interest shall be calculated from the date of entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." 28 U.S.C. § 1961(a). Therefore, Plaintiff shall be awarded post-judgment interest at the statutory rate provided in § 1961(a) for his compensatory damages of $65,000 and prejudgment interest from February 6, 2018, until the judgment is satisfied.

### G. Defendant's Motions to Stay of Execution

Defendant has filed two motions to stay execution: a Motion to Stay of Execution by Supersedeas Bond and a Motion to Stay of Execution Pending Post-Trial Orders. Defendant has secured a bond in the amount of $1.2 million. (Doc. No. 83-1). Plaintiff does not oppose this motion; accordingly Defendant's Motion to Stay of Execution by Supersedeas Bond is GRANTED. In light of this ruling, Defendant's Motion to Stay of Execution Pending Post-Trial Order is DENIED AS MOOT.

## III. CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Judgment as a Matter of Law, or in the Alternative Motion for a New Trial (Doc. No. 61) is DENIED IN PART with respect to the REDA and WDPP claims and GRANTED IN PART with respect to the tort claims and election of remedies. Plaintiff has fourteen (14) days from the date of this Order to elect his remedies.

IT IS FURTHER ORDERED that Plaintiff's Motion for Additional Findings and Amended Judgement (Doc. No. 64) is DENIED IN PART and GRANTED IN PART. Plaintiff's judgment is amended to reflect pre-judgment interest in the amount of $6,695.89 and post-judgment interest at the statutory rate provided in 28 U.S.C. § 1961(a) for the period beginning February 6, 2018, until the judgment is satisfied.

IT IS FURTHER ORDERED that Defendant's Motion for Stay of Execution by Supersedeas Bond (Doc. No. 82) is GRANTED. Defendant's Motion for Stay of Execution Pending Post-Trial Motions (Doc. No. 54) is DENIED AS MOOT.

IT IS SO ORDERED.

Signed: June 28, 2018

Frank D. Whitney
Chief United States District Judge

21