UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-cv-00819-FDW-DSC

| JUSTIN DRISKELL, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER and AMENDED JUDGMENT |
| SUMMIT CONTRACTING GROUP, INC., | ) | |
| Defendant. | ) | |

THIS MATTER is before the Court on Plaintiff's Motion to Elect Remedies (Doc. No. 86), Plaintiff's Motion for Attorney's Fees. (Doc. No. 56), and the remaining portion of Plaintiff's Motion for Amended Judgment (Doc. No. 64) related to the trebling of damages. Defendant opposes all motions. For the reasons that follow, Plaintiff's Motion to Elect Remedies is GRANTED, Plaintiff's Motion for Amended Judgment (Doc. No. 64) is GRANTED IN PART as to treble damages, and the Motion for Attorney's Fees is GRANTED IN PART and DENIED IN PART. Also before the Court is Defendant's Second Unopposed Motion to Supplement Record on Appeal (Doc. No. 105). In light of the Fourth Circuit Court of Appeal's dismissal of the original appeal (Doc. No. 106), this motion is DENIED AS MOOT.

**I. BACKGROUND**

Following trial, a jury entered a verdict in favor of Plaintiff finding Defendant terminated Plaintiff's employment and in doing so, violated North Carolina's Retaliatory Employment Discrimination Act ("REDA") and Wrongful Discharge in Violation of Public Policy ("WDPP"). (Doc. No. 52, pp. 1-2). The jury found Plaintiff was entitled to $65,000 for the REDA claim and the wrongful discharge in violation of public policy claim. <u>Id</u>. The jury also returned a verdict in favor of Plaintiff for his battery, negligent supervision, and retention claims and awarded him

1

$4,000 for each count. Id. at 2-3. Following post-trial motions, this Court reversed the jury verdict for Plaintiff on his tort claims and affirmed the verdict with respect to Plaintiff's REDA and WDPP termination claims. (Doc. No. 85). The Court granted Defendant's Motion to Order Plaintiff to Elect Remedies (id.), and Plaintiff subsequently filed the instant motion. Plaintiff has also requested attorney's fees under REDA; however, because that motion could be impacted on Plaintiff's election of remedies, the Court held ruling until now. In short, Plaintiff seeks an award of attorneys' fees under REDA in the total amount of $633,099.95, based on a lodestar fee and enhancements. The Court addresses these motions in turn.

## II. ANALYSIS

### A. Motion to Elect Remedies and Motion to Amend Judgment

Plaintiff's motion elects to recover $250,000 of the jury's $681,000 punitive damages award on his common law WDPP claim, and, under the REDA, Plaintiff elects to recover his untrebled compensatory damages in the amount of $65,000 and statutory attorneys' fees. Plaintiff argues he is required to elect his remedies—not his cause of action. Plaintiff argues United Labs. v. Kuykendall, 335 N.C. 183, 194 (1993), suggests he can recover common law punitive damages and statutory attorneys' fees here. Plaintiff contends the sums do not amount to double recovery and they have entirely distinct policy motivations. Defendant disagrees, arguing Plaintiff's "mix and match" approach "impermissibly cherry-picks the verdict and violates well-founded principles that Plaintiff concedes prohibit double recovery for the same injury." (Doc. No. 92, p. 1). In the alternative, Plaintiff elects to recover compensatory damages ($65,000), treble damages ($130,000), and his attorneys' fees under REDA in the event that the Court does not allow his first choice.

Turning first to Plaintiff's request to elect both punitive damages under the WDPP claim,

2

as well as untrebled compensatory damages and attorneys' fees on the REDA claim, the Court disagrees with Plaintiff's interpretation of and reliance on United Labs. In that case, the North Carolina Supreme Court considered "whether United, having succeeded at trial on both its common law tortious interference claim and its unfair practices claim, may recover both punitive damages in its common law claim and untrebled compensatory damages and attorneys fees in its unfair practices claim." United Labs., 437 S.E.2d at 378. The court explained a party may not recover punitive damages for tortious conduct and treble damages for a violation of Chapter 75 based on that same conduct:

> Where the same source of conduct gives rise to a traditionally recognized cause of action, as, for example, an action for breach of contract, and as well gives rise to a cause of action for violation of G.S. 75–1.1, damages may be recovered either for the breach of contract, or for violation of G.S. 75–1.1, but not for both.
>
> Marshall, 47 N.C.App. at 542, 268 S.E.2d at 103. We held in Ellis that plaintiffs, who sued for libel and for an unfair practice under Chapter 75 based on that libel, had to elect between recovering compensatory and punitive damages in the libel claim and treble damages in the unfair practice claim. Ellis, 326 N.C. at 227–28, 388 S.E.2d at 132.
>
> Ellis and Marshall are distinguishable. [the defendant's] conduct which gives rise to an award of attorneys fees is not the same conduct that gives rise to an award of punitive damages. To recover punitive damages at common law a plaintiff must show that the defendant acted in a willful or oppressive manner. Hardy v. Toler, 288 N.C. 303, 218 S.E.2d 342. To recover attorneys fees for unfair practices, however, the plaintiff must also show that "there was an unwarranted refusal by [the defendant] to fully resolve the matter which constitutes the basis of ... the suit." N.C.G.S. § 75–16.1(1). Since recovery of attorneys fees requires proof different from that which gives rise to punitive damages, the claims do not arise from "the same course of conduct." Marshall, 47 N.C.App. at 542, 268 S.E.2d at 103.

United Labs., 437 S.E.2d at 379–80.

In permitting the election, the North Carolina Supreme Court held, "[S]ince the conduct required for an award of attorneys fees is different from the conduct required for an award of punitive damages and since the two recoveries serve different interests, permitting the plaintiff to

3

recover both will not result in 'double redress for a single wrong . . . ." Id. at 381 (quoting Smith v. Oil Corp., 79 S.E.2d 880, 885 (N.C. 1954)). The court therefore stated the prevailing party was not required to elect between the two and could recover punitive damages in its tort claim and attorneys fees in its unfair practice claim. United Labs., 437 S.E.2d at 381.

United Labs is distinguishable from the case at bar. During trial, Plaintiff relied on the same conduct to support his claims under REDA and WDPP. This Court has already explained:

> REDA prohibits employers from taking retaliatory actions against an employee who "in good faith does or threatens to . . . [f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other actions . . . with respect to [OSHA]. N.C.G.S § 95-241(a) (2017). To succeed on a REDA claim, a plaintiff must prove that: "(1) he exercised his rights to engage in protected activity . . . ; (2) he suffered an adverse employment action; and (3) a causal connection exists between the exercise of the protected activity and the alleged retaliatory action." Nguyen v. Austin Quality Foods, Inc., 974 F.Supp.2d 879, 882-83 (E.D.N.C. 2013). Once the plaintiff can establish a prima facie showing of a REDA violation, "the burden shifts to the defendant to show that it would have taken the same unfavorable action in the absence of the protected activity of the employee." Id.

(Doc. No. 85, p, 3). As to WDPP, the Court also noted, "To prevail on a claim for unlawful termination in violation of public policy 'a plaintiff must identify a specified North Carolina public policy that was violated by an employer in discharging the employee.'" (Doc. No. 85, p. 10 (citing McDonnell v. Guilford County Tradewind Airlines, Inc., 670 S.E.2d 302, 305 (N.C. Ct. App. 2009) (quoting Salter v. E & J Healthcare, Inc., 575 S.E.2d 46, 52 (N.C. Ct. App. 2003))).

The distinction therefore turns on the conduct relied on by Plaintiff to establish his REDA and WDPP claims, respectively. Based on a review of the record, the Court finds the conduct to be the same – in short, both causes of action hinge on proof that Defendant fired Plaintiff after he engaged in protected activity. Because these claims involve the same conduct, the relief permitted under United Labs is unavailable here. Smith v. Computer Task Grp., Inc., 568 F. Supp. 2d 603, 621 (M.D.N.C. 2008) (explaining the plaintiff "acknowledges that this wrongful termination claim

4

rests upon the very public policy underlying REDA . . . [and] therefore rises or falls on the viability of his REDA claim."); see also Blankenship v. Town & Country Ford, Inc., 622 S.E.2d 638, 642 (N.C. Ct. App. 2005) (noting the North Carolina Supreme Court has "held that in a case involving a statutory violation and an unfair and deceptive trade practice claim plaintiff faces an election of remedies for recovery based upon the same conduct or transaction." (citing Stanley v. Moore, 454 S.E.2d 225, 229 (N.C. 1995)); see also Gordon v. Pete's Auto Serv. of Denbigh, Inc., 637 F.3d 454, 460 (4th Cir. 2011) (noting it is well-settled that a plaintiff "may not receive a double recovery under different legal theories for the same injury.").

Furthermore, as noted in this Court's order for Plaintiff to elect remedies, Plaintiff has conceded the basis for his argument to the jury on both claims to be the same. See Doc. No. 85, p. 17 (citing Plaintiff's arguments as to the proposed verdict form, which provided "Plaintiff has included an instruction that states that amounts awarded under REDA and amounts awarded under [the wrongful discharge] instruction will not be added together.")). Plaintiff argued as much to the jury, stating:

> So there's this REDA law we just covered, but it's also wrongful termination under North Carolina law to -- there's basically two ways to recover for wrongful termination. Now, if you have checked "yes" to box two, you automatically check "yes" to box three because there's overlapping under the wrongful termination tort and the REDA tort for anticipatory workers' compensation terminations and safety complaints. So that's easy. If you find for us on those two for Question 3, automatically check "yes."
>
> . . .
>
> Now, 3(a) and 3(b) are the same damages questions about back pay and front pay. So you would put in the same numbers that you used for 2(a) and 2(b). We don't get to get compensated twice for winning the same claims. So don't -- understand that you just put the same number. It's only going to be received once.

Trial Transcript, pp. 1027-1028. Accordingly, the Court denies Plaintiff's "first choice" to elect to recover $250,000 of the jury's punitive damages award on his common law WDPP claim and

5

recover his untrebled compensatory damages in the amount of $65,000 and statutory attorneys' fees under the REDA claim.

Alternatively, Plaintiff elects to recover compensatory damages ($65,000), treble damages ($130,000), and his attorneys' fees under REDA in the event that the Court does not allow his first choice. The Court grants that request. At the outset, the Court rejects Defendant's argument this Court's prior Order implicitly denied Plaintiff's request to treble damages in his Motion for Additional Findings and Amended Judgment (Doc. No. 64). The Court's prior Order did not squarely rule on that portion of Plaintiff's Motion to Amend Judgment and only ruled on issues related to reinstatement, front pay, apportionment of punitive damages, and pre-judgment and post-judgment interest (Doc. No. 85, pp.16-17). The Court always intended to defer ruling on the trebling issue until it could fully analyze the damages in response to Plaintiff's election of remedies. To the extent the Court's prior ruling did not leave open the trebling issue, the Court hereby *sua sponte* reconsiders its prior order and will address the issue of treble damages now. The Court also rejects Defendant's argument that Plaintiff waived the issue of trebling damages, as his motion clearly requested such relief (Doc. No. 64, pp. 1-2; Doc. No. 65, pp. 16-18).

As to the trebling of damages, the Court must consider whether "the employee was injured by a willful violation of G.S. 95-241[the section prohibiting discriminatory or retaliatory action by an employer]," and, if so, "the court shall treble the amount awarded under subdivision (4) of this subsection." N.C. Gen. Stat. § 95-243. Such a finding "requires a showing of . . . knowledge or reckless disregard of whether an action violated the statute." Morris v. Scenera Research, LLC, 788 S.E.2d 154, 160-61 (N.C. 2016). The trial court, rather than the jury, must make the finding of willfulness. Id. at 161.

The Court finds the jury's award of punitive damages to be persuasive, but not dispositive,

6

on this issue. Carter v. St. Augustine's Univ., 821 S.E.2d 307 (N.C. Ct. App. 2018) (vacating and remanding for new findings of fact and conclusions of law because "the trial court based its conclusion that the University acted willfully solely on the jury's awards of punitive damages."). The Court has already explained Plaintiff's reliance on the same conduct for both the WDPP and REDA claims. In order to have awarded punitive damages for the WDPP violation, as instructed by the Court, the jury had to find by clear and convincing evidence the existence of fraud, malice, or willful and wanton conduct by Defendant. The Court's instructions explained the high level of proof of intent, and the jury's verdict awarding punitive damages demonstrated the jury was satisfied with the evidence presented as to Defendant's willfulness.

Notwithstanding the jury's verdict finding of willful conduct, "the trial court must make the finding of willfulness, and a reviewing court must uphold the trial court's finding of willfulness if there is competent evidence to support that finding." Morris, 788 S.E.2d at 161. Here, the Court finds competent evidence showed Plaintiff, his father, and other employees reported to Defendant that Rhyner drank alcohol and appeared intoxicated on the job. The Court finds that evidence showed this conduct violated Defendant's substance abuse policy. The Court also finds Defendant failed to adequately investigate and, instead, attempted to conceal and minimize these reports. In addition, email communications admitted into evidence showed Nicole Padgett's disdain for worker's compensation issues and a general effort by Defendant to willfully engage in retaliatory action because of Plaintiff's complaints. In light of this evidence and the other evidence presented at trial, the Court finds Defendant's REDA violation to be willful. The Court, therefore, "shall" award treble the jury's award of $65,000 in damages to Plaintiff. N.C. Gen. Stat. § 95-243. Accordingly, damages shall be awarded in the amount $195,000.

**B. Motion for Attorney's Fees**

7

Having determined that Plaintiff's election of remedies is appropriate, the Court turns to Plaintiff's Motion for Attorney's Fees. Plaintiff seeks an award of attorneys' fees under REDA in the total amount of $633,099.95. Plaintiff is seeking a lodestar fee in the amount of $476,015; an 8% enhancement for representation without payment in the amount of $38,081.20; and an additional 25% enhancement in the amount of $119,003.50. For reasons to be discussed, the Court awards reasonable attorneys' fees in the amount of $441,600 with no enhancements.

**1.    Reasonable Fees**

Under REDA, the Court may, in its discretion, "award to the plaintiff and assess against the defendant the reasonable costs and expenses, including attorneys' fees, of the plaintiff in bringing an action pursuant to this section." N.C. Gen. Stat. § 95-243(c) (2017). Here, Defendant does not dispute that Plaintiff is entitled to attorneys' fees under REDA; rather, Defendant argues Plaintiff's requested amount is unreasonable and should be reduced accordingly.

When awarding attorney's fees, courts must assess whether the amount requested by the moving party is reasonable. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433. The result of this calculation, the lodestar figure, is strongly presumed to be reasonable. City of Burlington v. Dague, 505 U.S. 557, 562 (1992). In assessing the lodestar figure, courts consider twelve factors set out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974): (1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required properly to perform the legal services; (4) the attorney's opportunity costs in pursuing the litigation; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in

controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases. See Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1986) (adopting the Johnson factors).

Here, after considering all relevant facts and circumstances, the Court concludes $441,150 is a reasonable fee based on the actual rates and hours spent by Plaintiff's counsel. After review of the affidavit of attorney Kevin Murphy, the accompanying billing records, and affidavits from various employment litigators across North Carolina, the Court makes the following findings and awards Plaintiff his requested lodestar amount after deducting fees for paralegals and support staff. This case was a complex case, raising unique legal questions and requiring extensive filings. As a result, this case required attorneys of skill and experience to expend a significant amount of time to pursue the claims. Skills commensurate with the skills of Plaintiff's counsel were necessary.

Defendant argues the billing entries for lead counsel were vague, excessive, redundant, unnecessary, and consisted of inappropriate block billing. As to vagueness, the Court finds counsel's billing entries adequately describe the work performed on behalf of the client and provide sufficient information for the Court to review the tasks performed. Nor were the billing entries excessive or redundant. As mentioned, this was a complex case and spending long hours on critical motions, such as the motion in opposition of summary judgment, is reasonable particularly when Plaintiff prevailed on such motions. Defendant points out Plaintiff's counsel's attendance at this Court's trial for Cargill Inc. v. WDS Inc. et al on January 10, 2018 as being unnecessary billing and this Court agrees. Accordingly, Plaintiff's requested attorney fee amount is reduced by $450.

Defendant also points out numerous block billing entries by Mr. Hermann throughout the

9

course of this litigation. Block billing is typically disfavored because "it does not provide the district court with a clear sense of how many hours were performed on a particular task," which prevents a court from determining if the time spent on any given task is reasonable. Triplett v. North Carolina Dep't of Pub. Safety, 2017 WL 3840422 at *5 (W.D.N.C. Sept. 1, 2017). However, this Court finds the alleged block billing entries here do not "frustrate [its] reasonableness review" to such an extent that a fee reduction is necessary. Id.

The record before this Court is wholly insufficient to show the paralegals and support staff provided professional legal services that required a legal training or background or that the fees for the services are commensurate with the skills and experience of the support staff. Plaintiff has provided no information about the skills, training or and experience of the Senior and Assistant Support Staff other than the assertion that their respective billing rates of $150 and $100 per hour are "reasonable" for the area. Providing no qualifications for the Court to assess prohibits this Court from being able to make any reasonableness assessment of the hours billed. See Dyer v. City of Gastonia, 2016 WL 4443190 at *5 (W.D.N.C. Aug. 19, 2016) (noting concern with billing for "interns of unknown qualifications"); see also United States Trouser, S.A. de C.V. v. Int'l Legwear Group, Inc., No. 1:11-cv-00244-MR-DLH, 2013 U.S. Dist. LEXIS 53822, at *2 (W.D.N.C. April 16, 2013) ("Hours claimed by a legal secretary or legal assistant are considered overhead for the firm and are therefore not recoverable." (citations omitted)).

Further, the billing entries for the Senior and Assisting Support Staff time are replete with clerical tasks such as "opened case file," "send subpoena," "scan in documents," and overly vague entries such as "background search" and "research." (Doc. No. 57-1, pp. 24-33). The clerical tasks should be "subsumed in [the] law firm's overhead" and should be disallowed or limited. Triplett, 2017 WL 3840422 at *4. Additionally, vague billing descriptions are disfavored,

particularly when they do not provide "sufficient information" for this Court to review the reasonableness of the tasks performed. See Eschert v. City of Charlotte, 2017 WL 3840275 at *4 (W.D.N.C. Sept. 1, 2017); see also Brown v. Mountainview Cutters, LLC, 222 F.Supp.3d 504, 514 (W.D. Va. 2016).

The burden of proving the reasonableness of the fees requested is on Plaintiff. See Robinson v. Equifax Info. Svcs., LLC, 560 F.3d 235, 244 (4th Cir. 2009). Because Plaintiff has provided this Court with no basis from which to conclude the requested fees for Senior and Assistant Support Staff are reasonable, the Court excludes the fees for the support staff and only awards attorneys' fees totaling $441,150.

### 2. Fee Enhancement

Plaintiff also argues for an 8% fee enhancement because of the delayed payment in this contingency case and a further 25% enhancement for exceptional circumstances, such as alleged dilatory conduct throughout the litigation by Defendant and the "undesirability" of the case. "If a lodestar fee is properly calculated, adjustment of that figure will, in most cases be unnecessary." Daly v. Hill, 790 F.2d 1071, 1078 (4th Cir. 1986). An enhancement for delayed payment is appropriate in those cases in which the fees are based on historical, as opposed to current, market rates. See id. at 1081 ("Using current market rates to calculate the lodestar may counterbalance the delay in payment." (quotation and citation omitted)). Moreover, "an enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar," City of Burlington v. Dague, 505 U.S. 557, 562 (1992), and any enhancements must be proven to be "necessary" with "specific evidence." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 553 (quotations and citations omitted).

Here, the lodestar fee has been calculated according to current market rates for legal

services in the Charlotte area, as indicated by Plaintiff's supporting affidavits. Thus, the delay in Plaintiff's counsel's payment has been counterbalanced by the above calculated lodestar fee. Plaintiff has also been unable to show how a further 25% enhancement is necessary under the circumstances. Accordingly, Plaintiff's request for a 33% enhancement of the lodestar fee is denied and Plaintiff will be awarded attorney's fees totaling $441,150.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Elect Remedies (Doc. No. 86) is GRANTED. Plaintiff's Motion for Additional Findings and Amended Judgment (Doc. No. 64) is GRANTED IN PART[1] to the extent it requests treble damages under REDA. Judgment is hereby AMENDED to reflect Plaintiff's election of remedies under REDA and a trebled damage award under REDA in the amount of $195,000. Plaintiff cannot recover on the damages awarded under WDPP for the reasons stated herein.

Defendant's Second Unopposed Motion to Supplement Record on Appeal (Doc. No. 105), is DENIED AS MOOT because of the Fourth Circuit Court of Appeal's dismissal of the original appeal (Doc. No. 106).

Plaintiff's Motion for Attorney's Fees (Doc. No. 56) is GRANTED IN PART and DENIED IN PART. Plaintiff is awarded attorney's fees in the amount of $441,600, exclusive of fees for support staff and with no further enhancements.

IT IS SO ORDERED.

Signed: March 28, 2019

Frank D. Whitney
Chief United States District Judge

---

[1] As explained above, the Court notes its prior Order (Doc. No. 65) previously GRANTED IN PART and DENIED IN PART other portions of the Motion (Doc. No. 64), but left open that portion of the motion related to treble damages.